IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MELVIN J.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 20 C 03284 |
| v. | ) |
| | ) Magistrate Judge Beth W. Jantz |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Melvin J.'s application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Dkt. 17, Pl.'s Mot.] is granted, and the Commissioner's cross-motion for summary judgment [Dkt. 23, Def.'s Mot.] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1]  In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by his first name and the first initial of his last name.

[2]  Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Kilolo Kijakazi has been substituted for her predecessor.

**BACKGROUND**

**I.     Procedural History**

On March 1, 2017, Plaintiff filed a claim for DIB and SSI, alleging disability since February 18, 2017 due to diabetes mellitus type 1, neuropathy in lower and upper bilateral extremities, vision problems, high cholesterol, high blood pressure, fatigue and tiredness, mood swings, inability to focus and concentrate, memory loss, and loss of consciousness. [R. 79.] Plaintiff's claim was denied initially and upon reconsideration, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on November 16, 2018. [R. 35.] Plaintiff personally appeared and testified at the hearing and was represented by counsel. [R. 35.] Vocational expert ("VE") Leida Woodham also testified at the hearing. [R. 35, 71.] On February 12, 2019, the ALJ denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. [R. 26.] The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017).

**II.    The ALJ's Decision**

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 16-17.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since February 18, 2017. [R. 17.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: diabetes mellitus with associated neuropathy; depressive disorder; and anxiety disorder. [R. 17-18.] The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, did not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 19-21.] Before step

2

four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except that he cannot climb ropes, ladders, or scaffolds; can frequently climb ramps, climb stairs, and balance; cannot tolerate more than occasional exposure to extreme heat, extreme cold, and vibration; and cannot have exposure to unprotected heights or hazardous machinery. The ALJ further indicated that Plaintiff needed a sit-stand option whereby after standing for one hour, he could sit for three minutes and then stand again. With respect to Plaintiff's mental RFC, the ALJ found that Plaintiff retained the capacity to understand, remember, concentrate, persist, and perform simple, routine, and repetitive tasks in a low stress environment, defined as having few, if any, changes in the work setting and simple work-related decisions. The ALJ further found that Plaintiff's jobs should be of a sequential nature, that Plaintiff can be around coworkers but cannot work on tandem or team tasks with them, and that Plaintiff cannot interact with the public. [R. 21-28.] At step four, the ALJ concluded that Plaintiff would not be able to perform his past relevant work as a mail carrier. [R. 28.] At step five, the ALJ concluded that based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act. [R. 28-30.]

## DISCUSSION

**I.  Judicial Review**

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking

3

whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.*, at 327.

The ALJ also has a basic obligation to develop a full and fair record, and to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Although the ALJ is

not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351).

## II. Analysis

Plaintiff makes three arguments challenging the ALJ's decision, including: (1) the ALJ improperly assessed Plaintiff's physical RFC; (2) the ALJ improperly assessed Plaintiff's mental RFC; and (3) the ALJ incorrectly assessed Plaintiff's subjective symptoms and limitations. After reviewing the record and the briefs submitted by the parties, this Court concludes that the ALJ erred in assessing Plaintiff's physical RFC. Because this failure alone warrants remand, the Court need not reach Plaintiff's additional arguments.

In crafting the Plaintiff's physical RFC, the ALJ limited the Plaintiff to light work, except that he cannot climb ropes, ladders, or scaffolds; can frequently climb ramps, climb stairs, and balance; and cannot tolerate more than occasional exposure to extreme heat, extreme cold, and vibration, and cannot have any exposure to unprotected heights or hazardous machinery. [R. 21-28.] The ALJ further indicated that Plaintiff needed a sit-stand option whereby after standing for one hour, he could sit for three minutes and then stand again. [R. 21-28.] Plaintiff argues, and the Court agrees, that the ALJ failed to adequately explain and support her physical RFC determination, and improperly relied on her own lay medical opinions in determining the RFC.

The ALJ assessed three medical opinions with respect to Plaintiff's physical RFC. First, the ALJ assigned "some weight" to the opinions of Plaintiff's primary care physician, Orna Regen,

5

M.D., who opined that Plaintiff "should not be working as a mail carrier," and noted that "[a]n office setting would be more temperature-controlled, where he would be able to keep his insulin in a more appropriate location (such as a locker) and he would be able to work in a seated position for at least part of the day which would reduce physical stress on his body." [R. 25-26, 919-920.] The ALJ assigned "some weight" to Dr. Regen's opinion, noting that although Plaintiff had a longitudinal relationship with her, Dr. Regen's opinions were vague in nature, offered little insight into Plaintiff's functional limitations, and were made in the context of disability proceedings in the Postal Service.

The ALJ also assigned little weight to the opinions offered by the state agency's physician consultants, who determined that Plaintiff did not have a severe physical impairment. [R. 27, 82, 94.] The ALJ noted that the state agency consultants did not adequately consider the combined effect of Plaintiff's physical conditions and did not have access to newer treatment records that adequately demonstrated the existence of severe physical impairments. [R. 27.] In other words, the only medical opinion to which the ALJ gave any meaningful weight—that of Dr. Regen—indicated that Plaintiff could not work as a mail carrier but (in the ALJ's view) otherwise did not provide detail with respect to Plaintiff's residual functional capacity.

The ALJ's rejection of all of the opinion evidence that provided any meaningful assessment of Plaintiff's physical RFC "created an evidentiary gap that rendered the ALJ's RFC unsupported by substantial evidence." *Ana M.A.A. v. Kijakazi*, No. 19-CV-7559, 2021 WL 3930103, at *2 (N.D. Ill. Sept. 2, 2021). The Seventh Circuit has explained that "ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves." *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018). Although an ALJ need not adopt any particular medical opinion in crafting the RFC, "an ALJ cannot reject all the relevant medical RFC

6

opinions and then construct a 'middle ground' and come up with [her] own RFC assessment without logically connecting the evidence to the RFC findings." *Darlene M. v. Kijakazi*, No. 19 CV 6389, 2021 WL 3773291, at *5 (N.D. Ill. Aug. 25, 2021) (cleaned up). Nor may an ALJ "play doctor" by "using her own lay opinions to fill evidentiary gaps in the record" caused by the absence of credited medical opinion evidence. *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010).

In this case, the ALJ both failed to logically connect the physical RFC to the evidence in the record, and also relied on her own lay opinion regarding the significance of medical findings in arriving at her RFC. These errors require remand. First, although the ALJ provided reasons why she did not feel Plaintiff was as limited as he indicated, [R. 23, 27], the ALJ did not logically connect the record to the limitations identified in the RFC. For example, the ALJ noted that Plaintiff "cannot tolerate more than occasional exposure to extreme heat, extreme cold, and vibration," [R. 23], but did not explain what in the record led her to that conclusion that Plaintiff could tolerate even occasional exposure. Indeed, the only medical opinion regarding Plaintiff's physical RFC to which the ALJ assigned any meaningful weight, Dr. Regen's, indicated that Plaintiff "was having great difficulty working as a mail carrier due to temperature extremes bringing out neuropathic symptoms," and further noted that Plaintiff had "issues with carrying his insulin in his pocket during extreme hot and cold weather." [R. 919.] Yet the ALJ provided no explanation for why she chose to limit Plaintiff to occasional exposure to temperature extremes, as opposed to no exposure to temperature extremes.

Likewise, the ALJ noted that due to Plaintiff's "persistent pain in his lower extremities," he needed "a sit-stand option whereby after standing for one hour, he should be able to sit for three minutes [] before standing again." [R. 23.] But the ALJ did not point to anything in the record

identifying or supporting that particular limitation, and Plaintiff's testimony indicated he was substantially more limited (noting a need to rest after standing for 15 to 20 minutes). [R. 54.] The ALJ was, of course, not required to accept Plaintiff's testimony, but the ALJ also was not permitted to pull out of a hat a "middle ground" RFC limitation, based on symptoms she credited, without attempting to explain how the limitation was supported by the record, and where no credited medical opinion identified or included the limitation. In short, it was not enough for the ALJ to simply provide reasons why she did not believe Plaintiff was as impaired as he testified, and then assign RFC limitations without the support of any credited opinion evidence or any indication of what record evidence supported those limitations (or how the record evidence supported those limitations). *See, e.g., Darlene M.*, 2021 WL 3773291, at *5 ("The ALJ's decision lacks sufficient explanation. SSR 96-8p requires ALJs to offer some record-based explanation supporting "each conclusion" made in the RFC[.]"); *Mark J. v. Saul*, No. 18 C 8479, 2020 WL 374676, at *6 (N.D. Ill. Jan. 23, 2020) (remanding where the ALJ rejected each medical opinion and "fail[ed] to tie the record to the RFC"); *Barbarigos v. Berryhill*, No. 17 C 3234, 2019 WL 109373, at *12 (N.D. Ill. Jan. 4, 2019) ("Without any medical expertise or other opinion evidence, it is not clear how the ALJ determined that the findings he identified in his decision support his RFC assessment that Plaintiff can stand or walk for six hours as opposed to five hours or lift ten pounds frequently as opposed to occasionally.").

Moreover, to the extent the ALJ attempted to justify the RFC, the ALJ impermissibly "played doctor" by "using her own lay opinions to fill evidentiary gaps in the record." *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010). This error is present throughout the ALJ's opinion. Most notably, at the crux of the ALJ's evaluation of Plaintiff's physical RFC was the ALJ's finding that Plaintiff's "physicians regularly observed that he had normal or only slightly diminished

8

strength, range of motion, reflexes, sensation, coordination, musculoskeletal appearances, and psychomotor capabilities in his upper and lower extremities." [R. 23.] But this statement does not appear to be based on *physicians' conclusions* that Plaintiff had "normal" or "only slightly diminished" capabilities; instead, it appears to reflect the *ALJ's lay opinion* that Plaintiff's findings were mostly normal. Indeed, several of the records the ALJ relied on in support of that conclusion contained anything but normal findings. For example, one evaluation cited by the ALJ noted that Plaintiff had no reflexes in his ankles, decreased vibration and cold sensation in his lower extremities, moderate incomplete paralysis of his sciatic nerves, moderate, constant right and left lower extremity pain, moderate paresthesia and/or dysesthesias of the right and left lower extremities, and moderate numbness in his lower extremities. [R. 305-311.] Another record cited by the ALJ indicated constant, moderate lower extremity pain, moderate lower extremity, moderate paresthesia and/or dysesthesia, moderate lower extremity numbness, a variety of decreased or absent reflexes (including absent reflexes in his ankles and knees), decreased light touch test results in his hands and lower legs and absent light touch test results in his feet and toes, decreased vibration sensation in all extremities, and absent cold sensation in his lower extremities, among other abnormalities. [R. 327-334.] These abnormalities led the evaluating physician to note that Plaintiff could not perform "physical work," and to note that Plaintiff was incapable of holding envelopes in his hands. [R. 334.] Other evaluations cited by the ALJ in support of her finding that Plaintiff had "normal" or "only slightly diminished" capabilities contain similar findings, as well as the evaluator's "no physical work" conclusion. [R. 445-452, 509-516.] They do not reflect a determination by a physician that Plaintiff's test results were "normal" or that his capabilities were "only slightly diminished." [R. 445-452, 509-516.] Thus, the ALJ appears to have conducted an independent evaluation of objective medical findings and concluded, based on

9

her lay opinion, that they were mostly normal. In so doing, the ALJ impermissibly "played doctor" by interpreting medical findings on her own. *See, e.g., Tomas S. v. Saul*, No. 19 CV 0726, 2020 WL 1491178, at *3 (N.D. Ill. Mar. 27, 2020) (remanding where ALJ crafted RFC "based on her independent assessment of Plaintiff's mental health records"); *Graf v. Berryhill*, No. 17 CV 50086, 2018 WL 6018604, at *3 (N.D. Ill. Nov. 16, 2018) (ALJ erred by independently interpreting colonoscopy results).

The ALJ also "played doctor" by making medical judgments about Plaintiff's treatment. The ALJ noted that Plaintiff's "health providers focused on conservative treatment modalities, which include prescriptions for Metformin, glucose injections with meals, as well as Capsaicin cream for his feet" and "adherence to a diabetic diet, smoking cessation, limiting or eliminating alcohol consumption, engaging in regular cardiovascular exercise, as well as daily monitoring of his blood glucose levels." [R. 22-23.] But the unstated premise of the ALJ's statement is her belief that a more serious impairment would be treated by different, presumably more aggressive modalities—a judgment that doesn't find any support from any accepted medical opinions in the record, and that the ALJ is unqualified to make on her own. *See, e.g., Graf*, No. 17 CV 50086, 2018 WL 6018604, at *2 (ALJ impermissibly played doctor "where the ALJ made low-level medical judgments about the importance of particular pieces of evidence or relied on unstated but unproven medical assumptions").

The ALJ was not without options in this case given the lack of medical opinion evidence. The ALJ simply chose an incorrect option by failing to tie the record to the RFC and by attempting to fill the evidentiary gap left by the absence of opinion evidence with her own lay opinions. "If the ALJ found that the available medical evidence in Claimant's record was insufficient to make an RFC determination, it was her responsibility to recognize the need for additional medical

10

evaluations." *Denson v. Berryhill*, No. 17 C 2220, 2018 WL 3546739, at *5 (N.D. Ill. July 24, 2018) (cleaned up). On remand, if the ALJ is unpersuaded by the available opinion evidence and unable to assess the record without making lay medical judgments, she should seek out additional opinion evidence, including, for example, by contacting Plaintiff's treating physicians or by calling a physician to testify. *See, e.g., id*. at *5 ("The ALJ could have re-contacted Dr. Grady for further information, sent Claimant for an independent medical evaluation, or requested that a medical expert testify."); *Skinner v. Astrue*, 478 F.3d 836, 843 (7th Cir. 2007) ("ALJs may contact treating physicians for further information when the information already in the record is 'inadequate' to make a determination of disability[.]").

In short, the Court remands this case because the ALJ's physical RFC determination is unsupported by substantial evidence, given the ALJ's failure to logically connect the RFC to record evidence and the ALJ's decision to "play doctor" by making independent, lay medical judgments. For consideration on remand, this Court also notes that the ALJ repeatedly noted that Plaintiff was often non-compliant with his physicians' treatment plans, but the ALJ did not appear to consider any reasons for Plaintiff's non-compliance, as she was required to. *See Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (holding that a claimant's non-compliance "should not negatively affect an individual's credibility if there are good reasons for the failure to complete the plan," and that "an ALJ may need to question the individual at the administrative proceeding to determine whether there are good reasons the individual did not seek medical treatment or fully comply with prescribed treatment"). Additionally, the ALJ made contradictory findings with respect to Plaintiff's compliance. In assessing Plaintiff's physical RFC, the ALJ declined to credit Plaintiff's testimony regarding his symptoms in part because Plaintiff was often non-compliant with his diet and medication regimen. [R. 23.] But in assessing Plaintiff's mental RFC, the ALJ cited Plaintiff's

11

adherence to his diabetic diet and medication regimen in concluding that Plaintiff overstated his mental impairments. [R. 27.] Finally, the ALJ should ensure that she does not impermissibly equate Plaintiff's activities of daily living—which can typically be performed at a claimant's own pace and leisure and with the assistance of others—with the demands of competitive, full-time work. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.").

Because the ALJ's failure to properly assess Plaintiff's physical RFC on its own warrants remand, the Court need not evaluate the remaining issues identified by the Plaintiff. On remand, however, the Administration should not construe the lack of findings on the remaining issues as an indication that the ALJ's initial adjudication was appropriate or not with respect to those issues.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [17] is granted, and the Commissioner's motion for summary judgment [23] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Date: 7/26/2022

_____
BETH W. JANTZ
United States Magistrate Judge